**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Shelly Puklich, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANT'S** |
| | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| vs. | ) | |
| | ) | |
| John E. Potter, Postmaster General, | ) | Case No. 1:06-cv-090 |
| United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |

_____

Before the Court is the Defendant's motion for summary judgment filed on March 2, 2009. See Docket No. 28. The Plaintiff filed a response in opposition to the motion on May 26, 2009. See Docket No. 37. The Defendant filed a reply brief on June 29, 2009. See Docket No. 40. The Court grants the motion for the reasons set forth below.

I.   **FACTUAL BACKGROUND**

The plaintiff, Shelly Puklich, works for the United States Postal Service at its Processing and Distribution Center in Bismarck, North Dakota. The defendant, John E. Potter, is the Postmaster General of the United States Postal Service (Postal Service).

Puklich began working for the Postal Service in 1990 and received a career appointment in May 1993. In 1995, Puklich reported to management at the Processing and Distribution Center that, beginning in August 1994, Gary Hofland, a non-supervisory co-worker, had made inappropriate comments and physical gestures toward her and occasionally placed his arm around Puklich's body. Hofland also made numerous telephone calls to Puklich. Although Hofland's behavior ceased for a time, it resumed in May 1995. See Docket No. 29-8.

On May 22, 1995, the Postal Service initiated an investigation into Hofland's workplace behavior. On June 7, 1995, the Postal Service provided Hofland a "Notice of Proposed Removal" in which it indicated that sexual harassment "is improper and unlawful conduct which includes deliberate and repeated remarks with a sexual connotation that are unwelcome to the recipient and undermines the employment relationship as well as employee morale." See Docket No. 29-8. Hofland was placed on administrative leave effective June 8, 1995. On June 26, 1995, Hofland agreed to sexual harassment training and to a twenty-nine day suspension that retroactively began on May 25, 1995, and ended on June 23, 1995. See Docket No. 29-9. Puklich did not take any further action against Hofland.

After the 1994-1995 sexual harassment, Hofland did not speak with Puklich for approximately eighteen months. Eventually, Hofland resumed making inappropriate comments to Puklich and touching her inappropriately. In January 2003, after Puklich underwent breast augmentation surgery, Hofland once again made inappropriate comments. See Docket No. 29-7.

Hofland's inappropriate behavior toward Puklich intensified in 2004. In January 2004, Hofland squeezed Puklich's buttocks and made an inappropriate comment. Hofland squeezed Puklich's buttocks on two other occasions and made inappropriate comments. Another time, Hofland caught Puklich off guard by kissing her on the cheek. Approximately two weeks after Hofland first grabbed Puklich in January 2004, she told Gary Neuharth, a non-supervisory co-worker, about Hofland's conduct. See Docket No. 29-7. In early January 2004, Michael Luger, the plant manager and a supervisor, heard a rumor about inappropriate behavior by Hofland. See Docket No. 29-11. In February 2004, Luger told Puklich he had "heard things" and asked her if she

wanted to "talk about anything." Puklich told Luger that she did not want to talk. See Docket No. 29-7.

Hofland again grabbed Puklich's buttocks and made an inappropriate comment in late February 2004. On March 2, 2004, Hofland grabbed Puklich and forcefully hugged her so that she could not escape. That same day, Puklich talked to Crystal Mertz, a non-supervisory co-worker, about the hugging incident. Puklich's supervisor at the time, Jeff Nordgaard, asked Puklich and Mertz what they were talking about during work hours. Mertz told Nordgaard that they were talking about Hofland and then told Nordgaard what Hofland had done to Puklich earlier that day. Later that day, Puklich talked privately with Nordgaard and told him about the hugging incident. See Docket No. 29-7. Nordgaard first learned of Hofland's conduct toward Puklich on March 2, 2004. See Docket No. 29-15.

On March 2, 2004, upon hearing of Hofland's conduct, Nordgaard reported Puklich's allegations to his supervisor, Michael Luger. On March 5, 2004, Luger provided Hofland a letter entitled "Emergency Placement in an Off-Duty Status" in which Hofland was informed that he was placed in off-duty status without pay effective March 2, 2004. See Docket No. 29-17. On April 9, 2004, Nordgaard provided Hofland a letter entitled "NOTICE OF CHARGES - PROPOSED REMOVAL" in which Hofland was informed of his proposed removal from the Postal Service within thirty days for unacceptable conduct. See Docket No. 29-18. On April 29, 2004, Luger informed Hofland in a letter entitled "Letter of Decision - Proposed Removal" that the charges were fully supported by the evidence and that the infractions were serious and warranted Hofland's removal from the Postal Service. See Docket No. 29-19. Hofland's removal from the Postal Service was effective May 15, 2004, and he never returned to work at the Postal Service.

From the time Gary Hofland stopped working at the Postal Service, Puklich was treated differently by her co-workers and supervisors. She was openly challenged by union representatives and others about coming forward with her complaint. By March 26, 2004, the stress at work was overwhelming for Puklich and caused her to experience migraine headaches, sleeping problems, depression, and anxiety. Puklich stopped going to work for a month pursuant to her doctor's orders. After January 2004, Puklich noticed that any deviation from her normal work schedule became a major issue with her supervisor, she was threatened with a transfer to a different position, and her work production was questioned for the first time. See Docket No. 29-7.

In December 2005, Cordell Hanson, Puklich's non-supervisory co-worker, shut off the light in the room he and Puklich were in, pulled her close to him, and kissed her on the head. Puklich never informed management of this incident but Michael Luger learned of it and talked separately to Puklich and Hanson. Puklich has not had any further problems with Hanson. See Docket No. 29-32, pp. 5-6. On August 30, 2006, non-supervisory co-worker Larry Jahner told another co-worker to hold down Puklich so Jahner could give her a birthday spanking and a "pinch to grow an inch." The co-worker refused to do so but Jahner nonetheless pinched Puklich. Puklich did not talk to management but a co-worker did. Management talked separately to Puklich and Jahner the night of the incident. See Docket No. 29-32, pp. 6-7. Puklich did not pursue any further action against Hanson or Jahner.

On May 22, 2007, Cordell Hanson was scheduled to work in the same area as Puklich for the first time since he had sexually harassed her in December 2005. Puklich reported the matter to her supervisor, Clay Ulrich. Michael Luger was informed of the work arrangement on May 24, 2007. See Docket No. 37-2. Puklich does not allege that Hanson sexually harassed her that day.

4

On March 9, 2009, Larry Jahner placed his hand on top of Puklich's hand and squeezed. Puklich pulled her hand away and did not respond. On March 10, 2009, Puklich informed her union steward and management about what had happened the night before. See Docket No. 37-7.

## II.  PROCEDURAL BACKGROUND

On April 8, 2004, Puklich notified the Postal Service's Equal Employment Opportunity (EEO) representative that she had been subjected to sexual harassment. A mediation session was held on June 22, 2004, but the issue was not resolved. On July 12, 2004, Puklich was notified of her right to file a formal EEO complaint with the Postal Service. See Docket No. 29-3. Puklich filed a formal EEO complaint with the Postal Service on July 23, 2004. See Docket No. 29-7. Puklich's complaint was based on sexual harassment that occurred from January 2004 to March 2004 and retaliation that occurred after March 2, 2004. Puklich also claimed that she had been threatened with a transfer to a different position with the Postal Service. See Docket No. 29-3. Puklich alleged that Gary Hofland "made repeated and unwelcome: a) sexual advances; b) suggestions that we engage in various sexual activities; c) sexually suggestive statements about me (or my body); and d) he has touched me against my wishes. The conduct reported in this complaint began in January, 2004. The above-described sexual harassment created an intimidating and offensive atmosphere at work." See Docket No. 29-7. Puklich alleged that since reporting the sexual harassment she had "been treated differently by [her] co-workers and [her] supervisors." See Docket No. 29-7.

The Postal Service accepted for investigation the sexual harassment and retaliation claims but did not accept the claim that Puklich had been threatened with a transfer. Puklich was given the right to elect a hearing before a United States Equal Employment Opportunity Commission (EEOC)

Administrative Judge or to receive a final agency decision by the Postal Service. See Docket No. 29-31. Puklich requested a final agency decision. On April 8, 2005, the Postal Service issued its final decision and came to the following conclusion:

> After a review of the entire record, the Postal Service is closing this case with a finding of **no discrimination** based on sex and/or retaliation. [Puklich] was subjected to a hostile work environment based on her sex; however, the agency has avoided liability in that it took prompt remedial action to correct the harassment. [Puklich] did not prove that she was subjected to a hostile work environment based on retaliation.
>
> Because [Puklich] has not prevailed on her claims of discrimination, no relief is awarded.

See Docket No. 29-3 (emphasis in original). The Postal Service informed Puklich that she could appeal the final agency decision to the appropriate United States District Court within ninety days or file an appeal with the EEOC within thirty days.

On May 11, 2005, Puklich appealed the Postal Service's final agency decision to the EEOC. On August 22, 2006, the EEOC found that once Puklich "finally communicated [Hofland's] conduct to management, the agency took immediate measures to stop the harassment, thereby avoiding liability." See Docket No. 29-4. The EEOC affirmed the final agency decision "because the preponderance of the evidence of record does not establish that discrimination occurred." See Docket No. 29-4. The EEOC informed Puklich of her right to request reconsideration of the decision within thirty days or to file a civil action in the appropriate United States District Court within ninety days.

On November 24, 2006, Puklich brought a pro se action in this Court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging sex discrimination against the United States Postal Service. See Docket No 1. In the complaint, Puklich contends that Gary Hofland

6

sexually harassed her from January 2004 to March 2004. Puklich contends that she reported Hofland to management in January 2004 but that management did not take the complaint seriously. Puklich also alleges in the complaint that she was sexually harassed by Cordell Hanson in December 2005 and by Larry Jahner in August 2006. The allegations made in the complaint against Hanson and Jahner were neither raised in the EEO complaint nor in the subsequent appeal to the EEOC.

In the complaint, Puklich references Hofland's inappropriate behavior in 1994-1995 but does not appear to allege that this behavior is a basis for the sex discrimination claim. Additionally, Puklich never raised Hofland's 1994-1995 sexual harassment in an EEO complaint. Puklich does not allege sex discrimination in the complaint based on the actions of Hanson in 2007 and Jahner in 2009. Puklich filed an EEO complaint regarding the 2007 incident with Cordell Hanson but there is no evidence presented that the claim went any further. See Docket No. 29-21. There is no evidence presented that Puklich has filed an EEO complaint based on Jahner's 2009 conduct. Although Puklich alleged retaliation in the EEO complaint and in the appeal to the EEOC, she did not allege retaliation in the complaint before this Court. Puklich retained counsel on February 29, 2008, but has not amended the complaint to include any of these claims.

The Postal Service contends that summary judgment is appropriate because Puklich has failed to prove that the Postal Service knew or should have known of the sexual harassment by Gary Hofland in 2004 and failed to take prompt and effective remedial action, and because Puklich has not established that the sexual harassment affected a term, condition, or privilege of her employment. Additionally, the Postal Service contends that Puklich has abandoned the retaliation claim but, if that claim is considered by the Court, summary judgment is appropriate because she has not met her burden of establishing a prima facie case of retaliation.

**III.     STANDARD OF REVIEW**

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and, therefore, the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(c). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

The Court must inquire whether the evidence presents sufficient disagreement to require the submission of the case to a jury or if it is so one-sided that one party must prevail as a matter of law. Diesel Machinery, Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party first has the burden of demonstrating an absence of genuine issues of material fact. Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005). The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

"While 'summary judgment should seldom be granted in employment discrimination cases, summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her case.'" Duffy v. Wolle, 123 F.3d 1026, 1033 (8th Cir. 1997) (quoting Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 615-16 (8th Cir. 1997)).

## IV. LEGAL DISCUSSION

In Title VII of the Civil Rights Act of 1964, "'Congress set up an elaborate administrative procedure, implemented through the EEOC, that is designed to assist in the investigation of claims of . . . discrimination in the workplace and to work towards the resolution of these claims through conciliation rather than litigation.'" Duncan v. Delta Consol. Indus., Inc., 371 F.3d 1020, 1024 (8th Cir. 2004) (quoting Patterson v. McLean Credit Union, 491 U.S. 164, 180-81 (1989)). Under Title VII, a claimant is required to timely file a discrimination charge with the EEOC before she may bring a Title VII action in court. Duncan, 371 F.3d at 1024 (citing 42 U.S.C. § 2000e-5(e)(1)).

Courts generally recognize that exhaustion of remedies is essential to Title VII's statutory scheme "'because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts.'" Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir. 1996) (quoting Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994)).

### A. SEXUAL HARASSMENT BY GARY HOFLAND

Shelly Puklich has brought a sex discrimination action against the Postal Service based on sexual harassment by her non-supervisory co-worker, Gary Hofland. The sexual harassment alleged in the complaint occurred in 2004. Puklich exhausted her administrative remedies as to the 2004 sexual harassment claim and, therefore, that claim is properly before the Court. Puklich also references sexual harassment that occurred in 1994-1995. However, Puklich never exhausted her administrative remedies as to that claim and has not alleged it in the complaint before the Court.

9

Therefore, the Court will only consider whether the 2004 sexual harassment amounted to sex discrimination under Title VII.

Under Title VII, an employer is prohibited from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); see Duncan v. Gen. Motors Corp., 300 F.3d 928, 933 (8th Cir. 2002). The EEOC has established that sexual harassment "is a form of sex discrimination prohibited by Title VII." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986). "Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when . . . such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a)(3). Therefore, it is well-settled that a "plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." Meritor Sav. Bank, FSB, 477 U.S. at 66.

To establish a prima facie case of sex discrimination under Title VII, Puklich must demonstrate that "(1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take proper remedial action." Hervey v. County of Koochiching, 527 F.3d 711, 721 (8th Cir. 2008).

The Postal Service concedes that Puklich has established the first three elements of a prima facie case of sex discrimination under Title VII. Puklich, as a woman, is a member of a protected

class, and the unwelcome harassment by Gary Hofland was based on sex.  Therefore, the only elements at issue are whether the harassment affected a term, condition, or privilege of Puklich's employment and, if so, whether the Postal Service knew or should have known of the harassment and failed to take proper remedial action.

### 1)    TERM, CONDITION, OR PRIVILEGE OF EMPLOYMENT

The Postal Service contends that the sexual harassment Puklich endured was "not so severe and extreme that a reasonable person would find that the terms or conditions of Puklich's employment had been altered."  See Docket No. 29.

"To be actionable, the alleged harassment must be 'sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'"  Tuggle v. Mangan, 348 F.3d 714, 720 (8th Cir. 2003) (quoting Meritor Sav. Bank, FSB, 477 U.S. at 67). Conduct "must be extreme to amount to a change in the terms and conditions of employment . . . ." Faragher v. City of Boca Raton, 524 U.S. 775, 789 (1998).  The standards that a plaintiff must meet are demanding because conduct must be extreme and not just rude or unpleasant.  Alagna v. Smithville R-II Sch. Dist., 324 F.3d 975, 980 (8th Cir. 2003) (citing Faragher, 524 U.S. at 788). This demanding standard requires more than a few isolated incidents and the harassment must have been "so intimidating, offensive, or hostile that it 'poisoned the work environment.'"  Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 967 (8th Cir. 1999) (quoting Scott v. Sears, Roebuck & Co., 798 F.2d 210, 214 (7th Cir. 1986)).

A court must consider all of the circumstances in a given case to determine whether a work environment is hostile or abusive, including "the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). "'Title VII does not prohibit all verbal or physical harassment in the workplace' and is not 'a general civility code for the American workplace.'" Pedroza v. Cintas Corp. No. 2, 397 F.3d 1063, 1068 (8th Cir. 2005) (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998)).

    Gary Hofland's conduct was not simple teasing or a couple of isolated offhand comments. Hofland repeatedly and consistently grabbed Puklich's buttocks, hugged her in a forceful manner, kissed her against her will, and made numerous lewd comments to her over a two-month period of time. Hofland's inappropriate conduct caused Puklich to become "increasingly uncomfortable," "afraid to come to work," and "physically sick." See Docket No. 29-7. Puklich was intimidated by Hofland, who was much larger than her, and did not want to make him angry because she knew of his temper. See Docket No. 29-7. Hofland's behavior went beyond merely rude and unpleasant and, instead, was physically threatening and humiliating. It is fair to say that Puklich's work environment was poisoned because she never knew when Hofland would approach her and touch or grab her inappropriately. She had to be on constant guard while at work and could never feel at ease. The Court finds that Puklich was subjected to severe and pervasive harassment from January 2004 to March 2004 that altered the conditions of her employment with the Postal Service.

    Although Puklich has established that a term, condition, or privilege of her employment was altered by Hofland's sexual harassment, to establish a prima facie sex discrimination claim she must establish that the Postal Service failed to take remedial action.

**2)   REMEDIAL ACTION**

The Postal Service contends that Shelly Puklich's sex discrimination claim fails because she has not presented evidence that after the Postal Service knew or should have known about the harassment, "it failed to take prompt remedial action reasonably calculated to end the harassment." See Docket No. 29.

Factors a court may consider when assessing the reasonableness of an employer's remedial measures "include the amount of time elapsed between the notice of harassment, which includes but is not limited to a complaint of sexual harassment, and the remedial action, and the options available to the employer such as employee training sessions, disciplinary action taken against the harasser(s), reprimands in personnel files, and terminations, and whether or not the measures ended the harassment." Stuart v. Gen. Motors Corp., 217 F.3d 621, 633 (8th Cir. 2000).

In January 2004, Puklich informed Gary Neuharth, a non-supervisory co-worker, that she was being harassed by Gary Hofland. In early January 2004, Michael Luger, a member of management, questioned Puklich after he heard rumors. Puklich did not tell Luger that she was being harassed and, instead, informed Luger that she did not want to talk. Puklich has failed to present any evidence that Luger knew she was being harassed. On March 2, 2004, Puklich informed her supervisor, Jeff Nordgaard, that Gary Hofland had been sexually harassing her. This was the first time Puklich informed any member of management that she was being harassed. The Court finds that March 2, 2004, was the first day management knew or reasonably should have known about the sexual harassment. Before that date, Puklich had never informed management of the harassment and, at most, management had only heard of vague rumors of inappropriate conduct by Hofland.

Hofland was placed on off-duty status without pay the very same day management learned of the sexual harassment. Postal Service management promptly took steps to investigate the claim. On May 15, 2004, Hofland's employment with the Postal Service had ended. The Court finds that the Postal Service took prompt remedial action reasonably calculated to end the sexual harassment of Shelly Puklich in the workplace.

The Postal Service acted swiftly, decisively, and severely against Gary Hofland. Puklich has failed to present evidence that raises a genuine issue of material fact as to the sufficiency of the remedial measures taken by the Postal Service once it knew or should have known of the sexual harassment. Therefore, summary judgment is appropriate as to Puklich's Title VII sex discrimination claim against the Postal Service for Hofland's 2004 sexual harassment of Puklich.

### B.     SEXUAL HARASSMENT BY CORDELL HANSON AND LARRY JAHNER

Shelly Puklich also has brought a sex discrimination action against the Postal Service based on sexual harassment by co-workers Cordell Hanson and Larry Jahner in 2005 and 2006, respectively. In subsequent pleadings, Puklich has referenced two additional allegations: one involving Hanson in 2007 and one involving Jahner in 2009.

The record reveals that Puklich never filed an EEO complaint against the Postal Service based on the conduct of Hanson in 2005 and Jahner in 2006 and 2009. Puklich did file an EEO complaint based on the 2007 incident involving Hanson but has failed to present evidence that the claim ever went beyond the filing of an EEO complaint. As for each of these claims, the EEOC has not had the opportunity to investigate those potential discriminatory practices or perform its roles of obtaining voluntary compliance and promoting conciliatory efforts. The Court finds that Puklich

has not exhausted her administrative remedies as to the 2005 claim against Hanson and the 2006 claim against Jahner. As for the 2007 claim against Hanson and the 2009 claim against Jahner, Puklich has neither exhausted her administrative remedies nor presented the claims to this Court.

### C.     RETALIATION

Although Puklich brought a retaliation claim against the Postal Service in the EEO complaint and in the appeal to the EEOC, she has not made a claim of retaliation in the complaint brought in this Court. Once Puklich retained counsel she could have amended the complaint to include a claim of retaliation, but chose not to do so. Therefore, because the retaliation claim is not properly before the Court, the Court will not consider whether the Postal Service retaliated against Puklich.

## V.     CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Defendant's Motion for Summary Judgment (Docket No. 28).

**IT IS SO ORDERED.**

Dated this 12th day of August, 2009.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court